[No. 27701-1-III.  Division Three.  September 18, 2012.]

DELBERT WILLIAMS, *Appellant*, v. LEONE & KEEBLE, INC., *Respondent*.

698

*Richard L. McKinney* (of *Law Office of Richard McKinney*), for appellant.

*Andrew C. Bohrnsen* (of *The Law Office of Andrew C. Bohrnsen PS*), for respondent.

¶1 KULIK, J. — Delbert Williams, a Washington resident, was injured in a fall while working for a subcontractor on a school remodeling project in Rathdrum, Idaho. Leone & Keeble Inc. (L&K), a Washington corporation, served as the general contractor on the project. After he was injured, Mr. Williams received Idaho workers' compensation. Later, he brought suit against L&K in Washington. This suit raised a

jurisdiction question and several choice-of-law issues. The trial court concluded that the court lacked jurisdiction but if the court had jurisdiction, Idaho law would apply. L&K appealed to this court and the Washington Supreme Court on the jurisdiction issue. The Supreme Court found that jurisdiction was proper and remanded the case to this court with specific instructions as to how to review the choice-of-law issues. We have done so. We hold that Washington law applies to each issue except that the applicable safety act is the Occupational Safety and Health Act of 1970 (OSHA), 29 U.S.C. §§ 651-678, rather than the Washington Industrial Safety and Health Act of 1973 (WISHA), chapter 49.17 RCW.

## FACTS

¶2 Delbert Williams is a resident of Washington. Mr. Williams was an employee of Paycheck Connection LLC, an Idaho company providing labor services, which regularly sent him to work for Pro-Set Erectors Inc., an Idaho construction company. In 2007, Pro-Set was hired as a subcontractor for a school remodeling project in Rathdrum, Idaho. L&K, a Washington corporation, was the general contractor for the project. Approximately 25 percent of L&K's work is performed in the state of Idaho.

¶3 While working on the project, Mr. Williams lost his balance and fell 35 feet, striking a steel wall brace on the way down. He suffered severe injuries to his legs and back. Mr. Williams reported his injuries to the Idaho State Insurance Fund (Fund). The Fund accepted the injury as compensable and began issuing workers' compensation payments to Mr. Williams. The payments stopped in September 2008. Mr. Williams filed suit against L&K, the general contractor, in Spokane County Superior Court.

¶4 The trial court granted L&K's motion to dismiss for lack of jurisdiction. The court also concluded that Idaho law would apply if the court did not lack jurisdiction. On appeal

to this court, we affirmed on the jurisdiction issue and did not address the choice-of-law issues. The Supreme Court reversed, concluding the Spokane County Superior Court had jurisdiction over a tort claim filed in Washington by a Washington resident against a Washington corporation. In footnote 6, the Supreme Court stated:

> The trial court held in the alternative that Idaho law would apply if the court did not lack subject matter jurisdiction. Our authorities hold that the location of the injury is not necessarily determinative. Instead, Washington adheres to the "most significant relationship" test, as developed by the *Restatement (Second) of Conflict of Laws* § 6 (1971), in a choice of law analysis. A review of the record does not reveal the factors considered or the basis for the trial court's holding that Washington should apply Idaho law. [Mr.] Williams raised and briefed the choice of law issue before the Court of Appeals but that court found it unnecessary to reach the issue; because the Court of Appeals did not reach the issue, it was not raised before this court. *On remand the Court of Appeals will have to review the trial court's choice of law ruling, giving application to the* Restatement (Second) of Conflict of Laws *§ 146 (1971) and the policy considerations discussed in* Johnson v. Spider Staging Corp., *87 Wn.2d 577, 580, 583, 555 P.2d 997 (1976).*

*Williams v. Leone & Keeble, Inc.*, 171 Wn.2d 726, 735 n.6, 254 P.3d 818 (2011) (emphasis added).

¶5 Significantly, the Supreme Court also noted that Mr. Williams's cause of action would not be allowed under Idaho law:

> That cause of action is not allowed under Idaho's equivalent act. IDAHO CODE § 72-223. If an Idaho court determines that a worker is injured in the course of employment, under Idaho law, a third party general contractor is generally immune to suit by an injured employee of its subcontractor. *See Fuhriman v. State*, 143 Idaho 800, 804-06, 153 P.3d 480 (2007); *Robison v. Bateman-Hall, Inc.*, 139 Idaho 207, 213-14, 76 P.3d 951 (2003).

*Id.* at 733 n.3.

## ANALYSIS

### A. Record on Choice of Law

¶6 As a preliminary matter, L&K argues that this court must remand the case back to the trial court because there is no trial court decision before this court or, alternatively, because the trial court neglected to explain the reasoning behind its conclusion that Idaho law should apply.

¶7 The trial court stated that Idaho law would apply to all issues where the law of the two states conflicted. In its initial opinion letter, the trial court ruled that if there were jurisdiction, the law of Idaho would apply. While the trial court based its decision on lack of jurisdiction, the order also stated, "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that assuming arguendo had the Court found jurisdiction over this matter, the Court would be required to apply Idaho substantive law." Clerk's Papers at 307. This is an appealable order under RAP 2.2(a)(3).

¶8 Mr. Williams moved for reconsideration on several grounds, including that the trial judge should separately consider choice-of-law issues with respect to each legal issue where a conflict existed. The trial court denied reconsideration in an opinion letter.

¶9 We should not, and do not, remand the choice-of-law issue back to the trial court because this court lacks the authority to do so. First, the Supreme Court's opinion expressly directs this court to review the choice-of-law question. Second, this directive is proper because this court did not reach the choice-of-law issue. Third, the Supreme Court's remand to this court is proper under RAP 13.7(b), which states in part:

> If the Supreme Court reverses a decision of the Court of Appeals that did not consider all of the issues raised which might support that decision, the Supreme Court will either consider and decide those issues or remand the case to the Court of Appeals to decide those issues.

¶10 Consequently, a decision by this court to remand the choice-of-law question back to the trial court would violate the Supreme Court's directive and RAP 13.7(b).

¶11 Additionally, numerous decisions hold that when the Supreme Court remands to a lower court, the lower court interferes with the Supreme Court's jurisdiction if the lower court makes any decision outside the specific directive to the lower court contained in the remand. *Garratt v. Dailey*, 49 Wn.2d 499, 500, 304 P.2d 681 (1956); *Robert Morton Organ Co. v. Armour*, 179 Wash. 392, 396, 38 P.2d 257 (1934); *Frye v. King County*, 157 Wash. 291, 293-94, 289 P. 18 (1930).

■ ¶12 L&K asserts remand is proper because the trial court did not explain the reasoning for its ruling on the choice-of-law question. L&K's argument is unpersuasive. The Court of Appeals conducts a de novo review of a trial court's decision regarding its conflict of law analysis and, thus, does not need the benefit of any additional findings by the trial court. *See Ellis v. Barto*, 82 Wn. App. 454, 457, 918 P.2d 540 (1996).

### B. Standard of Review

¶13 In choice-of-law questions, Washington has rejected the law of the place of injury, lex loci delicti, in favor of the most significant relationship rule for tort and contract choice-of-law problems. *Johnson*, 87 Wn.2d at 580.

¶14 The case here initially arose out of cross motions for summary judgment. The material facts were undisputed, and the trial court ruled, as a matter of law, that Idaho law applied. We engage in the same inquiry as the trial court. *Syrovy v. Alpine Res., Inc.*, 122 Wn.2d 544, 548 n.3, 859 P.2d 51 (1993). Issues of law are reviewed de novo. *Id.*

¶15 To resolve this case, we first look at the analysis set forth in *Johnson* and the instructions given to us by the Supreme Court.

¶16 1. Johnson v. Spider Staging Corp. In *Johnson*, Washington rejected the lex loci delicti rule and adopted the "most significant relationship" rule for choice-of-law questions sounding in tort. *Johnson*, 87 Wn.2d at 580. "Under this approach, the rights and liabilities of the parties are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties." *Zenaida-Garcia v. Recovery Sys. Tech., Inc.*, 128 Wn. App. 256, 260, 115 P.3d 1017 (2005).

¶17 In *Johnson*, a Kansas resident died after a fall in Kansas from a scaffold manufactured by a Washington corporation. Ms. Johnson sued the Washington corporation for wrongful death. *Johnson*, 87 Wn.2d at 578. The issue arose as to whether to apply Kansas law or Washington law on wrongful death damages. *Id.* at 579.

¶18 In reaching its decision that Washington law applied, the court established a two-part step for determining contract and tort choice-of-law problems. The court stated that it was in accord with *Restatement* section 6, which developed this approach, and with section 145, which sets out the general principles to apply. *Id.* at 580. First, a court must evaluate the contacts with each potentially interested state. *Id.* at 580-81.

¶19 The *Johnson* court noted that *Restatement* section 145 sets out the general principles that apply to a tort choice-of-law problem:

"(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

"(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

"(a)  the place where the injury occurred,

"(b)  the place where the conduct causing the injury occurred,

"(c)  the domicil, residence, nationality, place of incorporation and place of business of the parties, and

"(d)  the place where the relationship, if any, between the parties is centered.

"These contacts are to be evaluated according to their relative importance with respect to the particular issue."

*Id.* (emphasis omitted) (quoting RESTATEMENT § 145).

¶20 When the contacts are evenly balanced, the second part of the analysis is performed. This step requires the evaluation of the interests and public policies of the involved states to determine which state has the greater interest in the determination of the particular issue. *Id.* at 582 (quoting *Potlatch No. 1 Fed. Credit Union v. Kennedy*, 76 Wn.2d 806, 810, 459 P.2d 32 (1969)).

¶21 In *Johnson*, the section 145 contacts relevant to Washington included the fact that (1) the scaffolding manufacturer was a Washington corporation with its principal place of business in Washington, (2) the corporation's advertising originated in Washington, (3) the scaffold was shipped from Washington to Kansas, and (4) Washington set the safety standards for the scaffold. In contrast, the relevant contacts for Kansas were the fact that (1) Kansas was the place of the injury and death, (2) the plaintiff was a resident of Kansas, (3) the plaintiff's place of business was Kansas, and (4) the plaintiff ordered the scaffold from a Kansas distributor. *Id.* at 581-82. Applying a review of the contacts and applying a states' interest analysis, the court determined that Washington had a legitimate interest in the application of its full compensation policy, while Kansas had no interest in applying its wrongful death limitation on nonresidents being sued in their own state. *Id.* at 583-84.

■ ¶22 2. *Supreme Court's Instructions.* On remand, the Supreme Court gave specific instructions to this court. In its instructions, the Supreme Court directed this court to apply *Restatement* section 146 (not section 145, which was

applied in *Johnson*) and the "policy considerations" contained at pages 580 and 583 of *Johnson*. *Williams*, 171 Wn.2d at 735 n.6. The Supreme Court did not instruct this court to examine the factors set forth in step one of *Johnson*.

¶23 So, we must first apply *Restatement* section 146, which states:

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect *to the particular issue*, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

(Emphasis added.)

¶24 Under *Restatement* section 6, which is also referred to in section 145 and *Johnson*, the "choice-of-law principles" are:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
>
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
>
> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f ) certainty, predictability and uniformity of result, and
>
> (g) ease in the determination and application of the law to be applied.

¶25 In addition to instructing this court to give application to section 146, the Supreme Court also directed this

court to give application to the policy concerns discussed in *Johnson* on pages 580 and 583. *Id.*

¶26 On page 580 in *Johnson*, the court explains that it has rejected the lex loci delicti choice-of-law rule that would have required the court to apply the law of the place of the wrong. The court goes on to explain that it has adopted the most significant relationship rule for contract and tort choice-of-law problems. The court then states that it is in accord with *Restatement* section 6, which developed this approach. The court also stated that section 145 sets out the general principles to apply to a choice-of-law problem. *Johnson*, 87 Wn.2d at 580-81.

¶27 The Supreme Court also asks this court to examine the policy considerations discussed in *Johnson* at page 583. This part of *Johnson* explains that a state's decision to limit wrongful death damages is primarily local. In other words, the state in question enacted the damage limitation to protect its own residents. *Id.* at 582. The *Johnson* court then concluded that Washington's policy of full compensation applied where all of the defendants were Washington residents because Kansas had no interest in applying its limitation of damages to the nonresident defendants. *Id.* at 583. In short, "[w]hen one of two states related to a case has a legitimate interest in the application of its law and the other state has no such interest, clearly the interested state's law should apply." *Id.*

¶28 In *Johnson*, the court mentions that the contacts are balanced and then goes on to consider the states' interest and public policies. *Id.* at 582. Here, we are told to apply section 146 and the "policy considerations" of pages 580 and 583 of *Johnson*, which include a states' interest analysis. The court did not tell this court to apply the section 145 contacts listed on pages 581-82. Instead, the court instructs this court to apply section 146 and a states' interest analysis.

## C. State's Interest Analysis

■ ¶29 Based on the Supreme Court's instructions, we apply *Restatement* section 146 and perform a states' interest analysis. Applying section 146 here, this court must first assume that the local law of the place of injury (Idaho) applies.

¶30 There are several issues to consider when applying a states' interest analysis. Both Mr. Williams and L&K are Washington residents. OSHA applies in Idaho, and WISHA applies in Washington. But Mr. Williams provided testimony that these standards are substantially the same with respect to safety requirements to prevent falls. Mr. Williams asserts, and the Supreme Court agrees, that Idaho law grants L&K immunity from this suit. Idaho also has a cap on damages and does not apply pure comparative negligence but does apply negligence per se. Mr. Williams asserts that Washington law would reach a different result on each of these issues and that Washington has the greater interest in seeing that its residents get full recovery and that a Washington corporation is regulated.

¶31 1. *False Conflict.* As a preliminary matter, Mr. Williams argues that any conflict here is a false conflict where only one state, Washington, has an interest in applying its law. "A choice of law determination is made only if there is an actual conflict between the laws or interests of Washington and the laws or interests of another state." *Ellis*, 82 Wn. App. at 457. Mr. Williams also contends that Idaho has no interest in applying its law where both parties to the litigation are Washington residents. In contrast, L&K argues that the choice-of-law question here is not a false conflict and this court need only apply an analysis under the first step of *Johnson*. Counting the contacts leads to the conclusion that Idaho law should apply. L&K addresses the second stage of *Johnson* only for the purposes of argument.

■ ¶32 Both parties ignore the specificity of the Supreme Court's directive to this court. As we noted above, the

Supreme Court instructed this court to apply section 146 and the policy considerations discussed on pages 580 and 583 of the *Johnson* decision. This means that in our inquiry, we must assume that the conflict here is not a false conflict and that the application of section 145 is not dispositive. Hence, we proceed under section 146, keeping in mind the policy considerations on pages 580 and 583 of *Johnson*.

¶33 2. *Idaho Code (I.C.) Section 72-223—Third Party Claim.* The first conflict between Idaho and Washington law is stark. As the Supreme Court noted in *Williams*, Mr. Williams brought a negligence claim against a third party, a Washington corporation. According to the Supreme Court, a claim against a third party general contractor for negligence

> *is not allowed under Idaho's equivalent act. IDAHO CODE § 72--223.* If an Idaho court determines that a worker is injured in the course of employment, under Idaho law, a third party general contractor is generally immune to suit by an injured employee of its subcontractor.

*Williams*, 171 Wn.2d at 733 n.3 (emphasis added).

¶34 Mr. Williams argues that the Supreme Court's statement acknowledges that I.C. section 72-223 does not allow Mr. Williams's claims against L&K. Mr. Williams asserts that because I.C. section 72-223 does not allow his claims, the Idaho courts should not have subject matter jurisdiction over his case. Mr. Williams points out that in *State v. Jensen*, 149 Idaho 758, 241 P.3d 1 (2010), a statutory limitation on a court's power to adjudicate a particular type of case serves to define the scope of the court's subject matter jurisdiction. Mr. Williams also cites to Washington cases *Hatch v. City of Algona*, 140 Wn. App. 752, 167 P.3d 1175 (2007) and *Gennoe v. Sypolt*, 60 Wn. App. 517, 804 P.2d 653 (1991), where the courts held that a court of general jurisdiction had no subject matter jurisdiction if a statute provides a defendant with immunity.

¶35 We need not determine the extent of an Idaho court's subject matter jurisdiction. It is enough to know that

under I.C. section 72-223, L&K would be immune from Mr. Williams's lawsuit. This immunity demonstrates that Washington has a greater interest in having its law applied than does Idaho. More importantly, if L&K is immune from Mr. Williams's suit in Idaho, L&K is also precluded from arguing that Idaho has any significant interest in applying its laws concerning comparative negligence, offset, statutory caps, or negligence per se.

¶36 However, L&K's argument that it is not a third party contractor for purposes of I.C. section 72-223 has already been decided by the Washington Supreme Court's determination that Mr. Williams's claim against third party L&K "is not allowed under Idaho's equivalent act. IDAHO CODE § 72-223." *Williams*, 171 Wn.2d at 733 n.3.

¶37 Again, this court must apply *Restatement* section 146, including an interest analysis, along with the policy considerations on pages 580 and 583 of *Johnson*. The Supreme Court recognized that under I.C. section 72-223, Mr. Williams could not bring an action against L&K as a third party contractor. This court must proceed on that basis.

¶38 Applying the interest analysis, it is clear that the immunity granted by Idaho protects the interests of third parties operating within the state of Idaho. In contrast, by applying Washington law that does not grant immunity, Washington can protect the interests of its citizens seeking a full recovery and Washington is able to regulate one of its corporations. Hence, while Idaho seeks to apply a local law to this situation, Washington has a greater interest in obtaining a full recovery for one of its citizens by regulating a Washington corporation. In short, Washington need not apply Idaho's immunity statute in this instance.

¶39 3. *Cap on Damages.* The next conflict involves setting a cap on general damages. Idaho law limits recovery for general damages. I.C. § 6-1603. Washington law does not set a limitation, or cap, on general damages.

¶40 L&K argues that Idaho has a strong interest in limiting general damages because this limitation provides an incentive for corporations like L&K to come to Idaho to work. According to L&K, the cap was necessary to control the prices and conditions of liability insurance. I.C. section 6-1603 was passed as part of the larger legislative scheme aimed at addressing concerns that large civil jury awards were driving up the cost of liability insurance in Idaho. *Kirkland v. Blaine County Med. Ctr.*, 134 Idaho 464, 470, 4 P.3d 1115 (2000).

¶41 The purpose of Idaho's cap is to protect Idaho citizens from excessive liability insurance premiums. But the parties to this lawsuit are Washington residents. Idaho law does not express any interest in protecting Washington corporations doing business in Idaho. In contrast, Washington has an interest in protecting the rights of its citizens to a full jury trial.

¶42 L&K relies on *Ellis*. Applying the *Johnson* criteria and the *Restatement*, *Ellis* concluded that Idaho negligence law applied to a vehicle accident involving Washington residents who were operating a vehicle in Idaho. *Ellis*, 82 Wn. App. at 458-59. In *Ellis*, the court considered the differences between Washington's and Idaho's (a) liability limits of vehicle owners for negligence of third parties operating their vehicle with permission, (b) comparative fault statutes, and (c) rules governing vehicle turnarounds. *Id.* at 457. The court also considered the question of what statute of limitation applied. *Id.*

¶43 The court found that Idaho had the more significant relationship because every state adopts rules of the road and Idaho had the most significant relationship to the driving conduct. As to contributory fault, the court concluded that the local law where the alleged conduct and injury occurred applied. Additionally, the court determined that Idaho law would apply to the substantive law governing the liability of the owners of vehicles being driven by third parties. And the court concluded that the limitation

period of Idaho would apply because the substance of the Ellises' claim was governed by Idaho. *Id.* at 459. In *Ellis*, the application of the Idaho statute of limitation barred the Ellises' action. *Id.*

¶44 *Ellis* was decided based on the court's decision to apply local law or rules of the road to the driving conduct at issue. Here, the conflict is similar to the conflict in *Johnson*. In *Johnson*, Washington law was applied where Kansas had a limit on wrongful death damages and where the court determined the rules of the road to be a local interest to protect Kansas defendants. In *Johnson*, the court concluded that Washington advanced a deterrent policy of full compensation. *Johnson*, 87 Wn.2d at 583. The court also noted that Kansas had no interest in applying its limitation period on nonresident defendants. *Id.* at 583-84. Here, both parties are Washington residents and the application of Washington's policy of full compensation is furthered by the application of Washington law. In contrast, the application of Idaho's statutory cap to a Washington corporation does not protect Idaho residents.

¶45 L&K argues that the Idaho cap must be applied because the parties' only relationship with Washington is their residence. L&K quotes from *Rice v. Dow Chemical Co.*, 124 Wn.2d 205, 216, 875 P.2d 1213 (1994), where the court stated that " 'residency in the forum state alone has not been considered a sufficient relation to the action to warrant application of forum law.' " Resp't's Br. at 20. But in *Rice*, only one of the parties was a resident of Washington. Here, all of the parties are Washington residents.

¶46 4. *Domicile.* Citing *Rice*, L&K argues that residency alone does not establish a sufficient relationship to warrant the application of the forum's law. In *Rice*, the court considered a choice-of-law question based on the residency of one party in Washington and Washington's interest in providing for the full compensation for the personal injuries of its residents. The court concluded that the application of Washington law in this situation would

mean that Washington law could be applied in all tort cases involving a Washington citizen. *Rice*, 124 Wn.2d at 216.

¶47 Here, unlike *Rice*, both parties are Washington residents, and Washington has an interest in allowing full recovery for its resident and in regulating the conduct of a Washington corporation.

¶48 5. *Comparative Negligence.* In Idaho, a plaintiff's claim is barred if his or her fault is equal to or greater than the defendant's. I.C. § 6-801. This means that a plaintiff must be less than 50 percent at fault in order to recover. In contrast, Washington law applies pure comparative negligence. RCW 4.22.070. Moreover, Mr. Williams argues that because there can be no finding of negligence against L&K, there can be no third party allocation of negligence under Idaho law.

¶49 L&K points out that the fault allocation statutes, I.C. sections 6-801 through 803, reveal a logical and comprehensive treatment of the rights of the parties. L&K argues that the Idaho scheme balances the sometimes competing interests of (1) the exclusive liability of the employer under the workers' compensation statutes; (2) the policy against double recovery; (3) the policy against allowing an employer or its insurer to profit from the employer's own wrong; and (4) the third party's right of contribution for the comparative negligence of others, i.e., the employer or the employee. L&K also points out that Paycheck and Pro-Set are Idaho corporations and that Mr. Williams paid Idaho income tax and claimed workers' compensation benefits from the state of Idaho.

¶50 L&K argues that the Idaho rule governing percentage of fault allocation, I.C. section 6-802, directs that "[t]he court may, and when requested by any party shall, direct the jury to find separate special verdicts determining the amount of damages and the percentage of negligence or comparative responsibility attributable to each party." L&K contends that Idaho's policy of apportionment of fault to an otherwise immune employer is based on Idaho's policy of not allowing

any form of double recovery and its strong policy that any fault attributed to the employer must be applied to the amount of the lien that is reduced accordingly.

¶51 Our task here is to perform an interest analysis, comparing the interests of each state in connection with the conflicting statutes. Here, Idaho's interest in limiting the negligence of third party defendants protects Idaho corporations from a plaintiff's excessive demands. This is a local interest. Washington has a greater interest in seeking full recovery for a Washington plaintiff from a Washington corporation.

¶52 Mr. Williams contends that Idaho's modified version of comparative negligence does not define any conduct that he must follow but, instead, is merely a rule of risk allocation. According to Mr. Williams, Idaho has no interest in applying its laws in this case.

¶53 In *Johnson*, the court determined that a state's interest in limiting wrongful death damages constituted an interest to protect defendants from excessive financial burdens. *Johnson*, 87 Wn.2d at 582. The court viewed this interest as a local interest in protecting its own residents. *Id*. at 583. In *Johnson*, all of the defendants were Washington corporations. The court concluded that the application of the Kansas wrongful death limitation would not protect Kansas residents and would serve only to limit the damages of Kansas residents. *Id*. The court explained that in contrast, "Washington's deterrent policy of full compensation is clearly advanced by the application of its own law" because "[u]nlimited recovery will deter tortious conduct and will encourage respondents to make safe products for its customers." *Id*.

¶54 Moreover, Idaho has an interest in restricting a plaintiff's recovery to those instances where the plaintiff's fault is less than 50 percent. This rule does not define any conduct but simply denies the plaintiff recovery under

certain circumstances. Here, Washington has the greater interest in the division of resources between its residents.

¶55 Applying an interest analysis, Idaho's interest is a local interest to protect its own defendants. But the plaintiff and defendants here are both Washington residents. Washington has a greater interest in seeking full recovery for a Washington plaintiff while deterring tortious conduct of its Washington defendants.

¶56 6. *Apportioning Liability—Pro-Set.* Mr. Williams maintains that the Idaho law that apportions some percentage of liability to Pro-Set should not be followed. In Idaho, fault can be apportioned to Pro-Set, Mr. Williams's employer, but Washington forbids the allocation of fault to Pro-Set. RCW 51.04.010; RCW 4.22.070. Presumably, Mr. Williams is referring to the following statement: "In Idaho the employer is only entitled to subrogation if it is fault free. Otherwise, the amount of workmen's compensation is deducted from the third party recovery. *Schneider v. Farmers Merchant, Inc.*, 106 Idaho 241, 678 P.2d 33 (1983)." Br. of Appellant at 19.

¶57 L&K maintains that Idaho has a strong interest in not allowing an Idaho employer (Paycheck and Pro-Set) to be reimbursed if a jury concludes that the employer itself proximately caused any percentage of the worker's injury. Also, Idaho has adopted I.C. section 41-1840,[1] which compels the court, subsequent to the entry of a verdict, to reduce the medical lien to the amount paid by the state. This rule does not define any conduct but is simply a rule of risk allocation.

¶58 Washington has the greater interest in applying its law of pure comparative negligence between two of its residents. The Idaho laws in question are laws of risk allocation.

---

[1] I.C. section 41-1840(2) reads, "All such [pre]payments [of claims] shall be credited upon any settlement with respect to the same damage, expense or loss made by, or judgment or award rendered therefor in such an action against, the payor or his insurer, and in favor of any person to whom or on whose account payment was made."

¶59 7. *OSHA/WISHA.* L&K asserts there is a conflict of law because Washington applies WISHA and Idaho applies OSHA. Washington also follows the *Stute* standard for accidents occurring within its borders. *Stute v. P.B.M.C., Inc.*, 114 Wn.2d 454, 463-64, 788 P.2d 545 (1990). Specifically, *Stute* states:

> Thus, to further the purposes of WISHA to assure safe and healthful working conditions *for every person working in Washington,* RCW 49.17.010, we hold the general contractor should bear the primary responsibility for compliance with safety regulation because the general contractor's innate supervisory authority constitutes sufficient control over the workplace.

*Id.* at 464 (emphasis added).

¶60 *Stute* was applying RCW 49.17.010, which states:

> Therefore, in the public interest for the welfare of the people of the state of Washington and in order to assure, insofar as may reasonably be possible, safe and healthful working conditions for every man and woman *working in the state of Washington,* the legislature in the exercise of its police power . . . declares its purpose . . . to create, maintain, continue, and enhance the industrial safety and health program of the state.

(Emphasis added.)

¶61 Mr. Williams provided the testimony of James Hoctor, L&K's safety inspector on the construction site. Mr. Hoctor testified that the safety standards were substantially the same between Washington and Idaho. L&K does not challenge this evidence in its brief. Here, the subcontract between L&K and Pro-Set imposed the responsibility for maintaining safety standards on Pro-Set.

¶62 Mr. Williams contends that L&K would be immune under Idaho law even without I.C. section 72-223. In *Vickers v. Hanover Construction Co.*, 125 Idaho 832, 835-36, 875 P.2d 929 (1994), the court takes a narrow view of the civil liability of a general contractor for enforcing regulations for the benefit of a subcontractor's direct employees. In contrast to *Vickers, Kelley v. Howard S. Wright Construction*

*Co.*, 90 Wn.2d 323, 330, 334, 582 P.2d 500 (1978) recognized the common law duty of the general contractor to provide for the workplace safety for the workers of all the employees of any subcontractors when the general contractor *retains the right to control* those areas. In *Vickers*, the general contractor had the right to control the jobsite under the contract but escaped liability because of language in the subcontract that imposed control of the jobsite on the subcontractor. *Vickers*, 125 Idaho at 834-35.

¶63 Washington's interest in protecting its citizens and regulating its corporations appears to outweigh the disinterested posture taken by Idaho.

¶64 Idaho has an interest in applying Idaho construction site negligence law and protecting its workers. But in this situation, it appears that Idaho has little interest in compensating its workers and regulating a third party. Except for WISHA, Washington appears to have the greater interest.

¶65 8. *Reasonable Expectations.* L&K argues that this court should also consider the "reasonable expectations of the parties." Suppl. Br. of Resp't at 24. *Restatement* section 6(2)(d) refers to "justified expectations," not reasonable expectations. Specifically, *Restatement* section 6(2) provides, "When there is no [statutory] directive, the factors relevant to the choice of the applicable rule of law include . . . (d) the protection of justified expectations." Comment g to *Restatement* section 6 states, in part, "There are occasions, particularly in the area of negligence, when the parties act without giving thought to the legal consequences of their conduct or to the law that may be applied. In such situations, the parties have no justified expectations to protect, and this factor can play no part in the decision of a choice-of-law question."

¶66 9. *Negligence Per Se.* Idaho follows the traditional negligence per se rule. Therefore, in Idaho, the violation of a statute or administrative regulation establishes the elements of duty and breach in a tort action. This

rule lessens the plaintiff's burden. *O'Guin v. Bingham County*, 142 Idaho 49, 52, 122 P.3d 308 (2005) (quoting *Ahles v. Tabor*, 136 Idaho 393, 395, 34 P.3d 1076 (2001), *abrogated by Verska v. St. Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 265 P.3d 502 (2011)). In Washington, the violation of a statute or administrative regulation is only evidence of negligence. RCW 5.40.050.

¶67 On this issue, Idaho's law is more favorable to Mr. Williams than the Washington law. However, neither Mr. Williams nor L&K is a resident of Idaho, so neither has an interest in applying its negligence per se law to this issue.

## CONCLUSION

¶68 L&K points out that Mr. Williams drove to Idaho to perform his job and received his paychecks from an Idaho corporation. These paychecks had a deduction for Idaho state income tax. Upon being injured, Mr. Williams looked to the Idaho State Insurance Fund for payment of his medical bills and lost wages. Similarly, L&K successfully bid for an Idaho public works contract and complied with the laws governing corporations working in Idaho. L&K argues that from an objective standard, L&K had a reasonable right to expect that its conduct would be evaluated under Idaho law.

¶69 L&K asserts that under step one of the *Johnson* test, L&K's contacts with Washington are de minimis. Specifically, (a) the injury took place in Idaho; (b) the alleged negligent conduct took place in Idaho; (c) Mr. Williams was domiciled in Washington and L&K was domiciled in Washington and Idaho; and (d) the relationship between Mr. Williams, a lease employee of Pro-Set through Paycheck, and L&K was centered exclusively in Rathdrum, Idaho.

¶70 L&K argues that this court should apply only the first step of *Johnson*—the contacts set forth in *Restatement* section 145. L&K argues that the inquiry should stop at the first step of *Johnson* because there is no need for an interest analysis.

¶71 But the Supreme Court instructed this court (1) to apply *Restatement* section 146 and (2) to apply an interest analysis. In performing this inquiry, we conclude that Washington has an interest in obtaining a full recovery for Mr. Williams and in regulating L&K, a Washington corporation.

¶72 Our interest analysis compels us to apply Washington law to each issue, except we apply OSHA rather than WISHA. We remand to the trial court for proceedings consistent with this opinion.

KORSMO, C.J., concurs.

¶73 BROWN, J. (dissenting) — Considering footnote 6 of *Williams v. Leone & Keeble, Inc.*, 171 Wn.2d 726, 735 n.6, 254 P.3d 818 (2011), I understand Delbert Williams' desire to skip past the two-part test of *Johnson v. Spider Staging Corp.*, 87 Wn.2d 577, 580, 583, 555 P.2d 997 (1976), and the application of *Restatement (Second) of Conflict of Laws* § 145 (1971). In my view, Chief Justice Madsen in her concurring opinion aptly frames my analytical discomfort in approaching this straightforward conflict of law dispute. *Williams*, 171 Wn.2d at 736. In footnote 6 the *Williams* majority directs us to apply *Restatement* section 146 and the policy considerations of *Johnson* without mention of *Restatement* section 145. This has created confusion about whether a full contacts analysis is required. And, as Chief Justice Madsen observes, the majority's footnote "suggests the analysis that it wishes the Court of Appeals to follow and strongly hints at the result it wishes that court to reach." *Williams*, 171 Wn.2d at 736 (Madsen, C.J., concurring). In good conscience and in principle, I must resist.

¶74 In competently honoring the significant-relationship test we have consistently followed since *Johnson* in 1976, we should apply a two-stage analysis. First, we should decide if the contacts favor Idaho or Washington. Let the

chips fall where they may. If the contacts favor Idaho or Washington, the trial court applies either Idaho or Washington law. *Restatement* section 145 gives a nonexclusive list of contact factors to consider. Solely when the contact factors are evenly balanced should we reach the second analytical stage and examine the policies and interests of the two states to decide what law should apply to the case. *Johnson*, 87 Wn.2d at 581-82.

¶75 Applying a contacts analysis under *Restatement (Second) Conflict of Laws* section 145, I, like the trial court, would hold Idaho law should apply: The injury occurred in Idaho and we generally presume in personal injury cases the law of the place of the injury applies; the place where the conduct causing the injury occurred in Idaho; the place where the relationship between the parties was centered was in Idaho; and, as Leone & Keeble offered at oral argument, the reasonable or justified expectations of the parties place the dispute in Idaho. Idaho workers' compensation laws have already been utilized by Mr. Williams, and the work was performed under Idaho work standards. The sole factor that may favor Washington is the domicile, residence, and place of incorporation of the parties.

¶76 I would not conflate Washington superior court personal and subject matter jurisdiction over the parties as found by the *Williams* court and what law may be best for Mr. Williams with our task of deciding what state's law the superior court should now apply under our long-held conflicts analysis. I would not reach the second, policy and interest, stage of our traditional conflicts analysis.

¶77 I would affirm. Therefore, I respectfully dissent.

Review denied at 176 Wn.2d 1030 (2013).