**NOT FOR PUBLICATION**
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**FILED**

SEP 2 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

WEYERHAEUSER COMPANY, a
Washington corporation;
WEYERHAEUSER NR COMPANY, a
Washington corporation; ASPEN
INSURANCE UK LIMITED, a company
formed under the laws of England and
Wales,

Plaintiffs - Appellants,

v.

NATIONAL INTERSTATE INSURANCE
COMPANY, an Ohio corporation; FIRST
MERCURY INSURANCE COMPANY, an
Illinois corporation; THE NORTH RIVER
INSURANCE COMPANY, a New Jersey
corporation; LEXINGTON INSURANCE
COMPANY, a Delaware corporation; AIG
CLAIMS, INC.,

Defendants - Appellees.

No. 24-3066

D.C. No.
2:21-cv-03886-MEMF-E

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Maame Ewusi-Mensah Frimpong, District Judge, Presiding

Argued and Submitted August 11, 2025
Pasadena, California

---

[*]     This disposition is not appropriate for publication and is not precedent except
as provided by Ninth Circuit Rule 36-3.

Before: NGUYEN, FORREST, and VANDYKE, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge FORREST.

Appellants Weyerhaeuser Company, Weyerhaeuser NR (collectively "Weyerhaeuser"), and Aspen Insurance UK Limited, appeal from the district court's order denying a motion for reconsideration and granting partial summary judgment in favor of Appellees, who are several insurers who issued liability policies to non-party Gardner Trucking naming Weyerhaeuser as an additional insured. Pursuant to Federal Rule of Civil Procedure 54(b), the district court certified as a final judgment its order denying reconsideration and granting partial summary judgment to Appellees. We have jurisdiction pursuant to that rule,[1] *see Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 574 (9th Cir. 2018), and we affirm.

1. "We review choice-of-law questions de novo, but review underlying factual findings for clear error." *EB Holdings II, Inc. v. Ill. Nat'l Ins. Co.*, 108 F.4th 1211, 1218 (9th Cir. 2024) (quoting *Cooper v. Tokyo Elec. Power Co. Holdings, Inc.*, 960 F.3d 549, 557 (9th Cir. 2020)). Washington choice-of-law rules apply because this case was initially filed in Washington. *See Int'l Bus. Machs. Corp. v. Bajorek*, 191 F.3d 1033, 1036 (9th Cir. 1999).

---

[1] Aspen asks us to review the order transferring venue from the Western District of Washington to the Central District of California pursuant to 28 U.S.C. § 1404(a). But our jurisdiction in this case is limited to the claims that were certified pursuant to Rule 54(b). So we decline to address the order transferring venue. To the extent that Aspen asks us to issue mandamus relief, we decline to do so as Aspen has not established the elements necessary to grant such extraordinary relief. *See In re Bozic*, 888 F.3d 1048, 1052 (9th Cir. 2018).

The district court did not err in concluding that California law applied to Appellants' contractual claims. First, there is a "real conflict" because the resolution of this issue "is different under the law of the two states." *Erwin v. Cotter Health Ctrs.*, 167 P.3d 1112, 1120–21 (Wash. 2007) (quoting *Seizer v. Sessions*, 940 P.2d 261, 264 (Wash. 1997)). Second, Washington law provides that the parties' contracted-for choice of law is controlling, and in the absence of any contracted-for choice of law, the law of the state with the "most significant relationship" to the claims controls. *Id.*; *see Fluke Corp. v. Hartford Accident & Indem. Co.*, 7 P.3d 825, 831 (Wash. Ct. App. 2000). We conclude that California law applies to the contract claims. National Interstate's insurance policy with Gardner includes multiple California-specific endorsements, and the policy evidences the parties' intent to apply California law. *See Erwin*, 167 P.3d at 1120–21. Weyerhaeuser's contract with Gardner was executed and negotiated with one party in Washington and one in California, while Appellees' policies were issued to a California entity. The contracts were performed at Weyerhaeuser's California facilities, and Appellees' policies covered a risk in California. So the district court did not err in holding that California law applies to the contract claims.

Nor did the district court err in applying California law to Weyerhaeuser's tort claim or its claims for violations of the Washington Consumer Protection Act and Washington Insurance Fair Conduct Act. Again, there is a real conflict because,

unlike Washington, California does not allow a private party insured to bring a claim in the absence of an insurer's duty to provide coverage. *Compare St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 196 P.3d 664, 669 (Wash. 2008), *with Jordan v. Allstate Ins. Co.*, 56 Cal. Rptr. 3d 312, 324 (Ct. App. 2007).

Next, Washington's choice-of-law rules direct that we apply California law to Weyerhaeuser's tort and statutory claims. *See FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 331 P.3d 29, 36 (Wash. 2014)). Although Weyerhaeuser is headquartered in Washington, "residency in the forum state alone has not been considered a sufficient relation to the action to warrant application of forum law." *Rice v. Dow Chem. Co.*, 875 P.2d 1213, 1219 (Wash. 1994). Here the underlying settlement stems from a lawsuit in California, where the center of the parties' relationship is. Appellants also fail to supply a basis to upset the district court's finding that the record does not establish the location of Appellee's purportedly tortious conduct. And Appellees' policies contemplate applying California law to claims arising from the policies. So California law applies to Weyerhaeuser's claims for bad faith and violations of the Washington Consumer Protection Act and Washington Insurance Fair Conduct Act. Because these claims are not viable under California law, the district court did not err in dismissing them.[2]

---

[2] We disagree with our colleague's thoughtful partial dissent for several reasons. First, it is appropriate to consider the fact that Appellees' policies contemplated applying California law, because Weyerhaeuser has brought claims

4                                                                24-3066

2. The district court did not err in applying California Insurance Code § 11580.9(c) to resolve the priority of coverage. Section 11580.9(c) dictates that, as between an insurance policy covering the premises and a policy covering a vehicle, when both cover a loss the premises policy takes priority over the vehicle policy.

---

stemming from the Appellee's treatment of Weyerhaeuser's insurance claims based in those policies. Second, the partial dissent seems to conclude that because Weyerhaeuser's headquarters are in Washington, the parties' relationship is centered there and the injury was felt only in Washington. Those conclusions contradict the substantial weight of authority from courts applying Washington choice-of-law rules to comparable claims. *See, e.g.*, *T-Mobile USA, Inc. v. Selective Ins. Co. of Am.*, No. C15-1739JLR, 2016 WL 1464468, at *10–11 (W.D. Wash. Apr. 14, 2016); *MKB Constructors v. Am. Zurich Ins. Co.*, 49 F. Supp. 3d 814, 833 (W.D. Wash. 2014); *Costco Wholesale Corp. v. Nationwide Mut. Ins. Co.*, No. C11-1550 RAJ, 2012 WL 4320715, at *3–4 (W.D. Wash. Sept. 20, 2012); *Polygon Nw. Co. v. Nat'l Fire & Marine Ins. Co.*, No. C11-92Z, 2011 WL 2020749, at *5–6 (W.D. Wash. May 24, 2011). Because, as the district court found, "[n]othing occurred in Washington, except that the Weyerhaeuser entities were domiciled there and received communications there," we decline to give effectively dispositive weight in the choice-of-law analysis to Weyerhaeuser's domicile. And finally, the district court was not required to consider the § 6 factors because Washington state courts have long held (and still do) that courts should turn to applying these § 6 factors only when the § 145 factors are "evenly balanced." *See, e.g.*, *Erickson v. Pharmacia LLC*, 548 P.3d 226, 239 (Wash. Ct. App. 2024), *review granted*, 556 P.3d 1098 (Wash. 2024); *Williams v. Leone & Keeble, Inc.*, 285 P.3d 906, 910 (Wash. Ct. App. 2012).

Contrary to the dissent's characterization of *Woodward v. Taylor*, 366 P.3d 432, 436 (Wash. 2016) (en banc), we do not read the Washington Supreme Court to have implicitly overruled its decades-long rule of when courts must consider the § 6 factors. First, and most importantly, nowhere does *Woodward* say that courts must consider the § 6 factors in every case, instead describing consideration of these factors as "the *second part* of the most significant relationship test." *Id.* (emphasis added). Moreover, there was no reason for the court to reconsider its longstanding rule in that case, as the choice-of-law analysis was resolved on the grounds that there was no actual conflict between the state laws. *Id.*

24-3066

Here, the underlying claims were for injuries caused while loading a trailer attached to a Gardner truck on Weyerhaeuser's premises. Aspen's policy covered Weyerhaeuser's premises and Appellees' policies covered the vehicle. So section 11580.9(c)'s requirements are met, and the vehicle policies are "conclusively presumed" to be excess to Aspen's.

Weyerhaeuser's Self-Insured Retention does not negate the application of section 11580.9(c). Although California courts do not apply section 11580.9(c) to certain forms of self-insurance, they do apply it to self-insured retentions. *Compare Nabisco, Inc. v. Transp. Indem. Co.*, 192 Cal. Rptr. 207 (Ct. App. 1983), *with Metro U.S. Servs., Inc. v. City of Los Angeles*, 158 Cal. Rptr. 207 (Ct. App. 1979). Nor will we read a new exception into the plain text of section 11580.9(c), limiting its scope to disputes between policies that sit at the same level. The limited exception in section 11580.9(f) also does not apply because there is no "written agreement signed by all insurers who have issued a policy or policies applicable to a loss … and all named insureds under these policies." Cal. Ins. Code § 11580.9(f). None of the contracts or policies at issue purport to modify the conclusive presumption in section 11580.9(c), nor do they refer to the procedure for modification in section 11580.9(f). Moreover, even if Weyerhaeuser's contract with Gardner and each of the five policies issued by Appellees could collectively establish adequate written agreement, Appellants fail to show agreement between Aspen and Appellees

contracting around the conclusive presumption of section 11580.9(c).

The district court's judgment is **AFFIRMED**.

*Weyerhaeuser Co., et al. v. National Interstate Insurance Co., et al.*, 24-3066

FORREST, Circuit Judge, concurring in part and dissenting in part.

I agree with the majority's conclusion, though not entirely with its reasoning, that Plaintiffs' insurance-priority claim is governed by California law. I also agree with the majority's resolution of the priority analysis under Cal. Ins. Code § 11580.9. I disagree, however, with the majority's analysis of choice-of-law as it relates to Weyerhaeuser's bad-faith and statutory claims. Accordingly, I respectfully dissent in part.

As the majority correctly concludes, because venue was transferred under 28 U.S.C. § 1404, we apply Washington's choice-of-law rules to determine the applicable substantive law in this case. *See Atl. Marine Const. Co. v. U.S. Dist. Ct. of W.D. Tex.*, 571 U.S. 49, 65 (2013) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964)). For tort claims, Washington has adopted the most-significant-relationship test from the Restatement (Second) of Conflict of Laws. *Woodward v. Taylor*, 366 P.3d 432, 435 (Wash. 2016) (en banc). Under this test, the court must first determine whether there is an actual conflict between "the laws of the interested states." *Id.* If there is, then the court must: (1) "evaluate[] the contacts of each interested jurisdiction" through application of the factors outlined in § 145 of the Restatement; and (2) "evaluate the interest and policies of the potentially concerned jurisdictions by applying the factors" outlined in § 6 of the Restatement. *Id.* at 436.

1

This analysis applies to both Weyerhaeuser's bad-faith claim and its statutory consumer-protection claims. *See MKB Constructors v. Am. Zurich Ins. Co.*, 49 F. Supp. 3d 814, 832–34 (W.D. Wash. 2014) (applying § 145 to claims under Washington's Consumer Protection Act and Insurance Fair Conduct Act).

I agree with the majority that there is an actual conflict between Washington and California law. Therefore, the analysis turns on the evaluation of the § 145 contacts of these jurisdictions and the policy concerns outlined in § 6. And on that point, both the majority and the district court err by misapplying the § 145 factors and failing to examine the relevant contacts in light of the § 6 factors.

### 1.    Contacts

Restatement § 145 directs courts to consider the following contacts when evaluating the state with the most significant relationship in tort cases: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws § 145(2). The majority errs in three ways in evaluating the respective contacts of Washington and California.

First, it imports into its analysis of the § 145 factors its reasoning on the contract-based insurance-priority claim. *See* Maj. at 4. But a conflict-of-laws

2

analysis "applies on an issue-by-issue basis." *Erickson v. Pharmacia LLC*, 548 P.3d 226, 238 (Wash. Ct. App. 2024); *see also* Restatement (Second) of Conflict of Laws § 145(2) ("Contacts to be taken into account in applying the principles of § 6 to determine the law applicable *to an issue* include . . . ." (emphasis added)). The majority suggests that because the Gardner Insurers' policies "contemplate applying California law to claims arising from [those] policies," Maj. at 4, California law must apply to any claims even remotely related to those policies—like Weyerhaeuser's bad-faith and statutory claims. Even assuming the Gardner Insurers' policies contemplate that California law would apply to some claims between *Gardner* and the Gardner Insurers, it is unclear why this fact is relevant to claims between *Weyerhaeuser* and the Gardner Insurers, particularly those that do not arise from the contract itself.

Second, the majority, like the district court, places significant weight on the fourth factor, reasoning that the parties' relationship is centered in California because the "underlying settlement stems from a lawsuit in California." Maj. at 4**.** I disagree. Even for the insurance-priority claim, the location of the lawsuit is irrelevant. *See Saint Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202, 205 (5th Cir. 1996) ("[W]hen the issues of a case require construction and application of insurance policies, . . . the relevant inquiry is what contacts the state has with the insurance dispute, and not with an underlying lawsuit."). Where the parties' relationships

arguably began is not the same as where the parties' relationships are centered. And here, the aspect of Weyerhaeuser's and the Gardner Insurers' relationships relevant to the bad-faith and statutory claims are centered in the states where coverage decisions were made and from which the parties exchanged the communications forming the basis of those claims.

The record suggests that these locations are Washington and (presumably) the states in which each Gardner Insurer is located. The majority errs by presuming that the parties' relationship is centered in California simply because the relationship arguably began there, rather than focusing on the decisions and communications that form the basis of Weyerhaeuser's claims. To the extent that the record is unclear about from which state the Gardner Insurers made coverage decisions, I would remand for the district court to make further factual findings.

And third, the majority errs by failing to apply arguably the most important factor—the place where the injury occurred. *See* Restatement (Second) of Conflict of Laws § 145, cmt. e (suggesting that this factor often carries decisive weight, depending on the type of tort at issue). We have previously held—albeit, while applying Arizona's version of the most-significant-relationship test—that the state where the injury occurred in a bad-faith insurance claim is the state in which the insured was domiciled. *Lange v. Penn Mut. Life Ins. Co.*, 843 F.2d 1175, 1179 (9th Cir. 1988). Washington courts agree. *See Coronus XES Ltd. v. Certain Underwriters*

4

*at Lloyd's London*, 25 Wash. App. 1005, 2022 WL 17959778, at \*6 (Wash. Ct. App. 2022) (unpublished) (holding that "when an insurance company acts in bad faith or violates IFCA or CPA, its insured will experience that injury where the insured is located" (quoting *Alaska Airlines, Inc. v. Endurance Am. Ins. Co.*, No. C20-1444, 2021 WL 4033297, at \*5 (W.D. Wash. Sept. 3, 2021))). I see no reason not to apply this reasoning here, which establishes that Washington is the place of injury.

In sum, properly applied, the first, third, and fourth § 145 factors point to Washington over California. Weyerhaeuser's injury occurred in Washington; Weyerhaeuser is domiciled in Washington; and the parties' relevant relationship is centered in Washington and various other states that are not California. None of the § 145 factors point to California. The state where the conduct causing the injury occurred is unclear and none of the Gardner Insurers are domiciled in California.

## 2. Public Policy Considerations

Restatement § 6 directs that courts weigh several public policy factors when considering which contacts are most relevant. *See Woodward*, 366 P.3d at 436. These include: (a) "the needs of the interstate and international systems"; (b) "the relevant policies of the forum"; (c) "the relevant policies of other interested states and the relative interests of these states in the determination of the particular issue"; (d) "the protection of justified expectations"; (e) "the basic policies underlying the particular field of law"; (f) certainty, predictability and uniformity of result"; and (g) "ease in

5

the determination and application of the law to be applied." Restatement (Second) of Conflict of Laws § 6(2).

Both the majority and the district court failed to consider the § 6 factors in determining which of the § 145 contacts are most significant. The district court implied that Washington courts only reach the § 6 factors if the § 145 contacts are evenly balanced. That is incorrect. To the extent that some Washington cases suggest this, *cf. Myers v. Boeing Co.*, 794 P.2d 1272, 1278 (Wash. 1990) (en banc), more recent cases confirm that the § 6 factors are a mandatory step of analysis, *e.g.*, *Fluke Corp v. Hartford Acc. & Indem. Co.*, 34 P.3d 809, 815 (Wash. 2001) (en banc); *Woodward*, 366 P.3d at 436.[1] I would remand for the district court to consider the § 6 factors in the first instance.

For these reasons, I respectfully dissent in part.

_____

[1] The majority cites two Washington Court of Appeals cases for the proposition that Washington state courts only turn to the § 6 factors if the § 145 factors are evenly balanced. Maj. at 5 n.2. When we interpret state law, we are bound by the state's highest court, not its lower courts—particularly where the issue has been addressed by the highest court. *See Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1203 (9th Cir. 2002); *Estrella v. Brandt*, 682 F.2d 814, 817 (9th Cir. 1982). We are not free to disregard the Washington Supreme Court's most recent pronouncement in favor of conflicting decisions from the Washington Court of Appeals. Additionally, one of the cases cited by the majority predates *Woodward*, *cf. Williams v. Leone & Keeble, Inc.*, 285 P.3d 906 (Wash. Ct. App. 2012), making it particularly unpersuasive. The other is more recent, *see Erickson v. Pharmacia LLC*, 548 P.3d 226 (Wash. Ct. App. 2024), but the Washington Supreme Court has granted review on its choice-of-law analysis, *see* 556 P.3d 1098 (Wash. 2024) (table); Petition for Review, *Erickson v. Pharmacia LLC*, No. 1031351, 2024 WL 5396668 (Wash. May 31, 2024), which also undermines its persuasiveness in my view.